UNITED STATES of America, Plaintiff,

v.

ONE 1976 CADILLAC SEVILLE, VIN: 6S69R6Q459181, Defendant.

Civ. A. No. 6–70031.

United States District Court,
E. D. Michigan, S. D.

June 5, 1979.

**880**

James K. Robinson, U. S. Atty., L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

George E. Lee, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

The United States filed this Complaint for Forfeiture on January 7, 1976, pursuant to 28 U.S.C.A. § 1355, 49 U.S.C.A. §§ 781–788, and in particular 21 U.S.C.A. §§ 801 *et seq.*, claiming that on October 9, 1975, the Defendant Cadillac Seville was seized from John Floyd, Jr., and was "used to facilitate the transportation, concealment, receipt, possession, purchase, sale, barter or exchange of heroin," and, therefore, subject to seizure and forfeiture.

The facts can be summarized as follows: On the evening of October 2, 1975, Agent Markonni was working in his capacity as a special agent with the Drug Enforcement Administration at Detroit Metropolitan Airport. He observed an arrival of a non-stop flight from Los Angeles, California. (Note, this is one of three such flights from Los Angeles to Detroit that, according to Agent Markonni, are utilized by narcotic couriers and from which he has personally made many arrests).

He watched the passengers, including John Floyd and Bernard Rosenborough deplane. He followed these two men from the plane to the baggage area and into the parking area. Agent Markonni testified that these men exhibited a number of characteristics which fit the "drug courier profile." Based upon his observations of these characteristics, he approached Rosenborough who was about to enter the rear of the Defendant Cadillac Seville. He thereupon took Rosenborough into the terminal's first aid station, conducted a search and found one pound of heroin on his person.

Agent Markonni further testified that at the time he stopped Rosenborough, Floyd denied any knowledge of Rosenborough and started to enter the vehicle. Although ordered by Agent Markonni to remain on the curb, Floyd entered the vehicle and drove off.

The Defendant Cadillac Seville was seized on or about October 9, 1975, one week later.

Forfeiture proceedings against the vehicle were stayed, pending disposition of criminal charges against Rosenborough and Floyd, the car's owner. In a comprehensive opinion, Chief Judge (now Circuit Judge) Damon Keith found that the Government had seized the heroin illegally and ordered it suppressed as to both Defendants. *United States v. Floyd*, 418 F.Supp. 724 (E.D. Mich.1976). In an unpublished opinion, the Sixth Circuit affirmed, but concluded on the basis of its intervening decision in *United States v. Hunter*, 550 F.2d 1066 (6th Cir.

1977), that Defendant Floyd had no standing to contest the illegal seizure since the heroin was not found on his person, but on that of his co-defendant. Accordingly, the Order of Suppression was reversed as to Floyd. Thereafter, the Government dismissed all criminal charges arising from the incident against both Rosenborough and Floyd. Although the Government abandoned criminal charges, it reinstated these forfeiture proceedings against Floyd's vehicle.

Counsel for the respective parties have stipulated to having the matter decided on the briefs in support of the motion and cross motion for summary judgment, as well as on certain designated testimony primarily from the suppression hearing on the criminal charge. Both parties agree that no factual issues remain to be resolved.

### I.

Although the Government initially demanded forfeiture under 49 U.S.C.A. §§ 781, 782 and 21 U.S.C.A. § 881 in its Motion for Summary Judgment, it relies solely upon 21 U.S.C.A. § 881(a)(4). In relevant part, that statute provides for forfeiture to the United States of

> all . . . vehicles . . . which are used, *or are intended for use, to transport, or in any manner to facilitate* the transportation, sale, receipt, possession, or concealment

of controlled substances. (emphasis added)

■ A civil forfeiture action such as this is a civil *in rem* proceeding. The Government need only establish probable cause that the vehicle was illicitly used within the meaning of the statute in question. The burden of the proof then shifts onto the owner to rebut the probable cause showing and to demonstrate that the vehicle was not used in violation of said statute. The Government must show only probable cause, not a *prima facie* case. *Ted's Motors v. United States*, 217 F.2d 777 (8th Cir. 1954). The burden of proof is on the party claiming the property. *United States v. One Mercedes 280S*, 590 F.2d 196 (6th Cir. 1978); citing *United States v. One Twin*

*Engine Beech Airplane*, 533 F.2d 1106, 1110 (9th Cir. 1976). See, *United States v. One 1975 Ford F 100 Pickup Truck*, 558 F.2d 755, 756–57 (5th Cir. 1977); *United States v. One 1972 Toyota Mark II*, 505 F.2d 1162, 1163 (8th Cir. 1974).

■ "Probable cause" as used in forfeiture proceedings "is the same standard employed to test searches and seizures generally." *United States v. One Mercedes 280S, supra* at 199; that is,

> [W]hether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142. (1964).

Both parties agree with the above-stated legal principles. The parties disagree over whether, on the facts of this case, the Government established probable cause that the vehicle was used to "facilitate" the transportation of a controlled substance.

Respondent Floyd points to Judge Keith's determination (affirmed by the Sixth Circuit) that the Government agents acted without probable cause or even reasonable suspicion when they stopped and searched Rosenborough and found the heroin. In fact, Floyd argues that the Government is now collaterally estopped from arguing that it had probable cause to seize his vehicle.

The Government concedes, as it must, that the search of Rosenborough was done without probable cause. However, the Government contends that upon discovery of the heroin on his person it did have probable cause to believe that the Cadillac into which he was stepping was used, or was intended to be used, to "facilitate" the transportation of the heroin.

21 U.S.C.A. § 881(a)(4) allows forfeiture upon probable cause that a vehicle was "intended" to be used to transport contraband or that it was used "in any manner to facilitate the transportation [of contraband]." This statute is empirical proof of

Mr. Justice Harlan's statement that "centuries of history support the Government's claim that forfeiture statutes . . . have an extraordinarily broad scope." *United States v. U. S. Coin and Currency,* 401 U.S. 715, 719, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434 (1971).

■ Virtually every Court which has dealt with forfeiture statutes has felt the need to comment on their harshness. *See, e. g., United States v. U. S. Coin and Currency, supra,* 401 U.S. at 720–721, 91 S.Ct. 1041; *United States v. One 1975 Mercedes 280S, supra* at 198. This is principally true because neither the innocence of the owner nor the minuteness of the quantity of contraband discovered on the vehicle is a defense to forfeiture. *See, e. g., Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *United States v. One 1975 Mercedes 280S, supra* at 198–99; *United States v. One 1961 Cadillac,* 337 F.2d 730, 732 (6th Cir. 1964).

Given the harsh, quasi-criminal nature of forfeiture statutes, it is clear that they should be strictly construed. *United States v. Five Gambling Devices,* 252 F.2d 210, 213 (7th Cir. 1958); *cf. United States v. U. S. Coin and Currency, supra,* 401 U.S. at 721–22, 91 S.Ct. 1041, 1045 (forfeiture statute construed to apply only to "those who are significantly involved in a criminal enterprise"). There is some merit to the Government's argument that discovery of heroin upon a man who is stepping into a car provides probable cause that the vehicle was, in some way, being used to facilitate the sale or transportation of the drug. On the other hand, strict reading of the statutory language would require a clear connection between the vehicle and drug trafficking activity. Compare the expansive reading of § 881(a)(4) in *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir. 1977) (use of vehicle by drug peddler to go to scene of drug transaction sufficient to justify forfeiture, even if no drug was ever actually transported in the vehicle) with the restricted reading of that statute in *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H.1974) (use of vehicle on two occasions to lead undercover narcotics agent to scene of drug sale insufficient to justify forfeiture since vehicle was not "instrumental" to the transaction).

Even though Floyd's action in quickly driving away might be deemed suspicious, this Court notes that all criminal charges have been dropped. But *cf. One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (acquittal on criminal charges does not bar forfeiture action). In addition, it is uncontroverted that Rosenborough never rode in the car. Further, to uphold the Government's position here risks sanctioning the forfeiture of any vehicle containing a passenger with marijuana in his pocket.

## II.

The Court need not rule on this issue, however. For, assuming that forfeiture is warranted under § 881(a)(4), it is clear that constitutional considerations mandate judgment for the vehicle's owner. The Sixth Circuit's affirmance of Judge Keith's Order of Suppression as to Defendant Rosenborough conclusively establishes that the Government's seizure of the heroin was illegal. It is not open to dispute that without the illegal seizure of the heroin, the Government would have no basis for the institution of these forfeiture proceedings. The question thus becomes whether the Government should be allowed to take advantage of its admittedly illegal conduct to seize a citizen's property.

The mechanism used to protect citizens against illegal Government conduct, of course, is the exclusionary rule. Recent Supreme Court decisions have cut back the Rule's scope, emphasizing the Rule's high cost and the limited need to deter wrongful police misconduct. *See, e. g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (exclusionary rule inapplicable in state habeas corpus proceedings); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule inapplicable in civil fine proceedings); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (exclusionary rule not applied retroactively; deterrence

would be marginal); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule inapplicable to grand jury proceedings).

▮ Nonetheless, given the quasi-criminal nature of forfeiture proceedings, it is clear that the exclusionary rule applies to bar a forfeiture based on illegally obtained evidence. *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Significantly, the Court in *United States v. Janis*, 428 U.S. 433, 447 n.17, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) specifically reapproved *Plymouth Sedan* even while holding that the exclusionary rule should not apply to a civil fine proceeding.

▮ Given the Court's position that "the 'prime purpose' of the [exclusionary] rule . . . 'is to deter future unlawful police conduct,'" *United States v. Janis, supra* at 446, 96 S.Ct. at 3028 and the continued validity of *Plymouth Sedan*, this Court must apply the exclusionary rule here to prevent the Government from exploiting its illegal conduct in this forfeiture proceeding. Given the broad scope of forfeiture statutes, the failure to apply the legal conduct-deterring exclusionary rule here is to reward unlawful behavior. In the words of the First Circuit, to allow a forfeiture based on a direct invasion of unconstitutional rights would "attach[ ] too great a premium upon unconstitutional conduct." *Berkowitz v. United States*, 340 F.2d 168, 174 (1st Cir. 1965).

▮ This is a clear case. Absent the illegal seizure of the heroin, the Government would have no probable cause for instituting these forfeiture proceedings. Thus, this case is distinguishable from *United States v. One 1971 Harley-Davidson Motorcycle*, 508 F.2d 351 (9th Cir. 1974) and *John Bacall Imports Ltd. v. United States*, 412 F.2d 586 (9th Cir. 1969) where forfeiture actions were upheld on the basis of independent evidence, untainted by illegal conduct. *See also, United States v. One 1972 Chevrolet Nova*, 560 F.2d 464 (1st Cir. 1977).

▮ The only conceivable ground on which the Government can avoid an adverse determination by this Court is Fourth Amendment standing. It is well established that only a party whose rights are invaded has standing to argue that any resulting evidence should be suppressed. *See, Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Fourth Amendment standing concepts are closely tied to the exclusionary rule's deterrent purpose. By limiting standing to suppress illegally obtained evidence to those whose rights were invaded, adequate deterrence takes place while still allowing the evidence to be used to bring other malefactors to justice.

> The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth.

*Rakas v. Illinois*, 99 S.Ct. at 427, *citing Alderman v. United States*, 394 U.S. at 174–75, 89 S.Ct. 961.

These principles led the Sixth Circuit, in *United States v. Hunter, supra*, to repudiate the old "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) which conferred standing on criminal Defendants charged with possessory offenses, regardless of whether their Fourth Amendment rights were infringed. As indicated, on authority of *Hunter*, the Sixth Circuit ruled that Defendant John Floyd, in this case, had no standing to challenge the seizure of the heroin from his co-defendant, Bernard Rosenborough. Although Floyd is the owner of the vehicle in this case, that "no standing" determination is not dispositive.

The harshness of forfeiture statutes stems from their general disregard for the guilt or innocence of the owner of the vehicle or property involved. The basis for this is the legal "fiction that inanimate objects themselves can be guilty of wrongdoing. (citations omitted) Simply put, the theory has been that if the object is 'guilty,' it should be held forfeit." *United States v. U. S. Coin and Currency, supra,* 401 U.S. at 719, 91 S.Ct. at 1044. *See, Calero-Toledo v. Pearson Yacht Leasing Company, supra,* 416 U.S. at 683–84, 94 S.Ct. 2080.

In the case at bar, the Defendant is not John Floyd. The Defendant is the vehicle, charged with facilitating the sale or transportation of narcotics. The question presented is whether the Defendant vehicle should be deemed to have standing to object to the seizure of Bernard Rosenborough as he was entering the vehicle and to object to the subsequent search which resulted in the discovery of the heroin on his person.

This exact issue appears to be one of first impression in this Circuit. In *Plymouth Sedan v. Pennsylvania, supra,* police searched the vehicle itself and found illegal liquor in the trunk. The Court ruled that if the search was made without probable cause, the illegally seized liquor could not be used to sustain a forfeiture of the vehicle. However, the Court specifically referred to "the right of the owner of the goods to assert as a defense violations of his constitutional rights." *Plymouth Sedan, supra,* 380 U.S. at 701 n.11, 85 S.Ct. at 1251. A narrow reading of *Plymouth Sedan* would restrict application of the exclusionary rule to those cases where the owner of the vehicle has standing to object to illegal Government conduct. Such an approach was taken in *United States v. One 1963 Cadillac,* 250 F.Supp. 183 (W.D.Mo.1966). Under this view, the fact that the heroin was illegally seized is irrelevant since the Sixth Circuit has ruled that the vehicle's owner lacked standing to object to the heroin's seizure.

This Court cannot read *Plymouth Sedan* narrowly and believes the Supreme Court's restrictive reading of standing in *Rakas v. Illinois, supra,* to be inapplicable here.

Twin considerations of the unique nature of forfeiture proceedings and the need to deter wrongful Government conduct mandate exclusion of the evidence. As indicated, forfeiture proceedings are singularly harsh because of their *in rem* nature with the accompanying legal fiction that it is the 'vehicle' which is guilty. Given this universally acknowledged harshness of forfeiture statutes, Courts should be very reluctant to give the Government the additional advantage of using illegally obtained evidence in such proceedings. Further, it would be anomalous in the extreme to hold that the illegally seized evidence is admissible here because Floyd owned the car, where such evidence would have been clearly inadmissible if Rosenborough owned it. Accidents of ownership should not determine Fourth Amendment rights, especially in a proceeding where the vehicle, and not it's owner, is the named Defendant.

The above-mentioned deterrence considerations which underly the exclusionary rule provide a second, dispositive rationale. *Plymouth Sedan* mandates application of the exclusionary rule to forfeiture proceedings in order to deter Government lawlessness. The decision should be read broadly in light of language that "the Government [can] not seize evidence in violation of the Fourth Amendment for use in a forfeiture proceeding." *Id.* 380 U.S. at 698, 85 S.Ct. at 1249. Indeed, the Court, in *Plymouth Sedan,* stated that "the essential question is whether evidence . . . the obtaining of which violates the Fourth Amendment may be relied upon to sustain a forfeiture." *Id.* The Court held that it could not. The illegally seized heroin cannot be so used here. *See also Lee v. Thornton,* 370 F.Supp. 312, 324 (D.Vt.1974) (3-judge court), *vacated on other grounds,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975) (". . . evidence obtained in violation of the fourth amendment may not be used to sustain a forfeiture.")

The Government cannot have it both ways. It cannot urge an expansive reading of § 881(a)(4) and then advance standing arguments to permit the admission of the illegally seized heroin. If the heroin has sufficient connection with the vehicle to

justify a forfeiture, then the vehicle's owner should be permitted to object to the heroin's admissibility on constitutional grounds. It should make no difference who the vehicle's owner is or whether the evidence was seized from the vehicle itself, from a passenger riding in the vehicle, or (as here) from a passenger entering the vehicle. The Government should not be allowed to exploit its unlawful behavior and base its action on illegally seized evidence.

The Respondent's Motion for Summary Judgment is Granted, and the Government's Motion for Summary Judgment is Denied.

The vehicle shall be restored to its owner.

So ordered.