**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN REAL PROPERTY LOCATED AT 2323 CHARMS ROAD, MILFORD TOWNSHIP; One 1977 Twin Engine Beech Aircraft, Registration Number N58EM; Miscellaneous Items of Personal Property Seized Pursuant to Search Warrant; Miscellaneous Items of Personal Property Located at 2323 Charms Road; and $517.00 United States Currency; Defendants.**

No. 89–70751.

United States District Court, E.D. Michigan, S.D.

Dec. 5, 1989.

A. George Best, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

James Thomas, Detroit, Mich., for claimants Marilyn Dinning and Marnie Head.

James Burdick, Finkel, Whitefield & Selik, P.C., Southfield, Mich., for claimant David Gershon.

Michael Rex, Robert S. Harrison & Associates, Birmingham, Mich., for claimant Schuley Duane Head.

## OPINION AND ORDER

COHN, District Judge.

### I.

This is a civil forfeiture case involving the defendant properties and three sets of claimants. Claimant David Gershon (Gershon) is the owner of a 1977 twin engine Beech aircraft seized by agents of the United States Drug Enforcement Agency (DEA) pursuant to a seizure warrant, signed by a federal magistrate, on the grounds that the plane was used or intended to be used in the transportation of controlled substances in violation of 21 U.S.C. § 881(a)(4). Gershon filed papers styled "Claim of Ownership Interest" on March 22, 1989, asserting an ownership interest in the aircraft.

Claimant Schuley Duane Head (Duane Head) seeks return of various items of personal property, seized by Michigan State Police Narcotic Enforcement Team Officers (MSP–NET) pursuant to a seizure warrant signed by a state district court judge. Though the items remain in the custody of the state police, they are claimed by the DEA in a complaint for forfeiture, under 21 U.S.C. § 881(a)(6). On March 24, 1989, Duane Head filed papers styled "Claim," asserting that he is the lawful owner of the seized items of personal property. On June 13, 1989, Duane Head filed papers styled "Claim," asserting that he is the lawful owner of a lathe and drill press specifically identified in an "Amended Warrant of Arrest and Notice In Rem" executed by the United States District Court's Deputy Clerk.

Claimants Marilyn Dinning (Dinning) and Marnie Head (Ms. Head) seek return of the real property located at 2323 Charms Road, which was seized by the DEA pursuant to 21 U.S.C. §§ 881(a)(3) and (7). On March 22, 1989, Dinning and Head filed papers styled "Claim of Interest," asserting an interest in the real property located at 2323 Charms Road.

The three sets of claimants submitted motions for summary judgment and argued in support of the motions on August 17, 1989. At the hearing, the Court noted that the motions of Gershon and Duane Head were really motions to dismiss addressed to the adequacy of the government's complaint. The Court took the motions under advisement and ordered that: 1) the government file an amended complaint alleging with particularity the grounds for forfeiture of the aircraft; 2) the government file a list of the items of personal property belonging to Duane Head that it believes are forfeitable under the statute, listing them separately as drug paraphernalia and items purchased with proceeds from drug transactions; 3) the government file an amended complaint alleging with particularity the grounds for forfeiture of the listed items of Duane Head's property; and 4) Dinning and Head file a statement of undisputed facts in support of their motion for summary judgment.

The government has filed an amended complaint. All of the parties, except for Dinning and Head, have complied with the Court's order. Dinning and Head have withdrawn their motion and filed an answer to the amended complaint. Gershon and Duane Head each have filed a motion to dismiss the amended complaint. Gershon also has filed a motion for return of logbooks and other personal property seized at the time that the aircraft was seized.

The motions to dismiss were argued orally on November 7, 1989, and are now before the Court for decision. Because the Court finds that the allegations contained in the amended complaint remain inadequate with respect to the aircraft, Gershon's motion to dismiss is GRANTED. Because the motion for return of the logbooks and other property is coupled with the motion regarding the aircraft, that motion is also GRANTED. The allegations contained in the amended complaint are also inadequate with regard to the portion of Duane Head's property associated with his auto repair business. Therefore, his motion to dismiss is GRANTED in part and DENIED in part.

## II.

On March 10, 1989, the United States initially filed a complaint for forfeiture against the Charms Road property, the aircraft, and the various items of personal property. The action grew out of the arrest of Duane Head on March 8, 1989, when he was taken into custody during the execution of a search warrant at his residence, the 2323 Charms Road property, by MSP–NET officers.

At the time of the arrest, the MSP–NET officers applied for and obtained a second warrant authorizing the seizure of property subject to forfeiture under the Michigan Public Health Code, MCLA § 333.7521. After obtaining the second warrant, the MSP–NET officers seized numerous items of personal property from Duane Head's residence. The United States then filed a complaint for forfeiture against the property seized by the MSP–NET officers. Upon the filing of the complaint, the Clerk of the Court issued a Warrant of Arrest and Notice In Rem commanding the United States Marshal to seize the property. However, Duane Head's property physically remains in the custody of the MSP–NET officers.

Gershon was identified by a police informant as a source of the cocaine allegedly sold by Duane Head. According to the informant, Gershon used or planned to use his aircraft to bring cocaine into southeastern Michigan. Based on this information and Gershon's alleged involvement in past drug trafficking, the government included the aircraft in the complaint for forfeiture and took it into custody.

## III.

■ Consideration of the motions to dismiss requires an assessment of the adequacy of the amended complaint. Civil forfeitures under 21 U.S.C. § 881 are governed by the Supplemental Rules for Admiralty and Maritime Claims. 21 U.S.C. § 881(b). Supplemental Rule E(2)(a) provides in part that:

In actions to which this rule is applicable the complaint shall state the circumstanc-

es from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

This requirement has been read by both the First and Eleventh Circuits to mean that "a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture." *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 638 (1st Cir.1988) (citing *United States v. $38,-000.00 in United States Currency,* 816 F.2d 1538, 1548 (11th Cir.1987)). In other words, the amended complaint must provide specific enough facts to support, without more, a reasonable inference that the government has a valid claim to the seized property. *United States v. Property, Known as 6 Patricia Drive,* 705 F.Supp. 710, 715 (D.R.I.1989).

■ In addition, the burden of proof in the trial of a forfeiture action is governed by 19 U.S.C. § 1615. Section 1615 requires that the government show probable cause for the forfeiture. Once probable cause has been shown, the burden of proving that the property was not involved in illegal drug transactions shifts back to the claimant. The level of probable cause that must be shown in a forfeiture proceeding is the same as is used to test searches and seizures generally. *United States v. One 1976 Cadillac Seville,* 477 F.Supp. 879, 881 (E.D.Mich.1979). However, in pleading forfeiture, the government cannot rest on the affidavits used to obtain a seizure warrant at the beginning of the process. Rather, it must show that it can prove that it has a right to retain the seized property. Thus, "a section 881 forfeiture complaint must allege facts sufficient to support a reasonable belief that the government could demonstrate probable cause [in the actual forfeiture hearing]." *United States v. Prop-*

*erty, Known as 6 Patricia Drive, supra* at 716. If the government's allegations, taken as true, would not establish probable cause for the forfeiture, then the government cannot shift the burden to the claimant at trial, and the complaint must be dismissed.

This formulation is necessitated by the Supreme Court's decision in *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). There, the Supreme Court held that the Fourth Amendment exclusionary rule must apply to civil forfeiture proceedings in order to deter government lawlessness. *Id.* at 698, 85 S.Ct. at 1249. It follows, then, that a claimant must have an opportunity to contest the validity of a seizure warrant and the seizure itself in a civil forfeiture action brought by the government. This, in turn, means that the government, through the complaint, must provide a claimant with enough information so that a challenge to the seizure can be meaningful. Ultimately, of course, the government must come forth with prima facie proof that the claimant has violated the statute to forfeit the property.

## IV.

■ The Court rejects the government's argument, based on *Kremhelmer v. Powers,* 633 F.Supp. 1145, 1148 (E.D.Mich. 1986),[1] that the generous standard for assessing the sufficiency of a complaint under Fed.R.Civ.P. 12(b)(6) applies to a civil forfeiture under 21 U.S.C. § 881. As explained in *United States v. Pole No. 3172, Hopkinton, supra* at 638 (citation omitted), "The peculiar stringency of the particularity requirement [for pleadings] in these cases is based on a concern for due process which arises out of a the 'drastic nature' of these remedies." *See also United States v. The Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1267 (2d.Cir.1989) (stating that the stan-

---

1. The Court notes that because *Kremhelmer* was a civil rights case, brought pursuant to 42 U.S.C. § 1983, its standard for assessing the validity of a complaint has no relevance to civil forfeiture cases. However, the Court does not reject the government's argument solely because the case

law cited in support of its position is not on point, but rather, the Court does so because it believes that a different standard must apply to forfeiture complaints in order to fulfill the constitutional guarantee of due process.

dard for the particularity of forfeiture complaints is more stringent than the pleading requirements of the Federal Rules of Civil Procedure). A fuller appreciation by the Court of this requirement certainly would have led to an accelerated determination of the issues raised by the motions to dismiss. Moreover, such an appreciation by the government might have led to a more benign use of the awesome power of pretrial seizure. The government's enthusiasm for the use of the forfeiture power to increase the risk of engaging in drug trafficking should not blind it to considerations of fairness in dealing with its constituents. In this regard, the Court is reminded of Justice Brandeis' dissenting words in *Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 572–73, 72 L.Ed. 944 (1928):

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in the insidious encroachment by men of zeal, well-meaning but without understanding.

Gershon asserts that dismissal of the amended complaint is appropriate because the government lacked probable cause for the seizure, because the government lacks probable cause for the forfeiture, because the government has failed to allege facts with sufficient particularity to sustain the forfeiture, and because the government has not shown a nexus between the aircraft and the illegal activity alleged as required by 21 U.S.C. § 881(a)(3) and (a)(4). Basically, what Gershon says is that the amended complaint is insufficient.

The government, in seeking forfeiture of the aircraft, says that Gershon has violated 21 U.S.C. § 881(a)(3) and (a)(4), either using or intending to use the aircraft as a container or conveyance for drug shipments. In the amended complaint, the government alleges that Gershon had prior drug contacts, that he owned an aircraft, that he would use the aircraft to import cocaine into southeastern Michigan, and that a drug detection canine sniffed the exterior

and interior of the aircraft and "alerted" to both. The only relevant allegations new to the amended complaint are those concerning the dog sniff. The amended complaint does not allege that any drugs, in any quantity, were found in the aircraft. Other than listing the year during which Gershon's drug shipments allegedly occurred, the amended complaint offers no details regarding Gershon's involvement in the shipments and does not mention Gershon's involvement in or planned involvement in any current drug shipments.

Assuming the truth of these allegations, there simply is not enough information set forth in the amended complaint to show that the government can demonstrate probable cause in a forfeiture trial. Nothing in the amended complaint serves to link the aircraft with drug trafficking. Gershon is said to have been involved in prior drug investigations and owns the seized aircraft. The government says nothing more. Although this is an action *in rem*, under 21 U.S.C. § 881(a)(3) and (a)(4), the government must justify the seizure by a showing that some individual has used the aircraft to violate drug trafficking laws. Allegations of an "alert" by drug detection dogs, if proven, cannot establish the necessary connection. *See United States v. One Gates Learjet Serial No. 28004*, 861 F.2d 868, 871 (5th Cir.1988) (holding that the presence of three to four milligrams of cocaine in defendant aircraft was not sufficient to show probable cause for forfeiture under 21 U.S.C. § 881(a)(4)). Without such a connection, Gershon is entitled to the return of the aircraft. Gershon also seeks the return of logbooks and various items of personal property seized contemporaneously with the aircraft. Because the government's claim to the aircraft is dismissed, these additional items should be returned as well.

### V.

▌ Like Gershon, Duane Head argues that the amended complaint lacks the requisite particularity to allow the government to proceed to trial. Because Duane Head's property was seized on the grounds of vio-

lations of 21 U.S.C. § 881(a)(6), the government must allege, with at least *some* specificity, that the personal property seized was purchased with proceeds from drug sales, obtained in exchange for drugs, or conventionally involved in drug trafficking. Initially, the government made a blanket allegation against an unknown number of items of personalty without any apparent attempt to sort out or determine which items were purchased with proceeds from drug transactions.

In response to the Court's bench order, the government filed a list of the property seized. The list divided the property into two categories: "Items related to trafficking in cocaine by SHULEY DUANE HEAD" and "Items obtained with the proceeds of, or traceable to, cocaine trafficking by SHULEY DUANE HEAD." However, the second category incorporates all of the items listed in the first category. Duane Head asserts that no particular link has been made between the firearms, field-glasses, and computer equipment designated as items related to drug trafficking and any particular drug trafficking activities. The Court agrees because what the government is really saying is that all of the listed items were purchased with the proceeds of drug trafficking.

This raises a significant pleading problem. In the First Circuit, the government's interest in real property purchased with funds traceable to drug transactions has been limited to only that portion of the property acquired with such funds. *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir.1988). While the Court recognizes that real and personal property need not necessarily be treated the same way, it is clear that Supplemental Rule E(2)(a) requires that the amended complaint's allegations contain some measure of specificity. Here, the amended complaint differs from the initial complaint only in that it alleges facts that may render appropriate the use of a "net worth" theory in lieu of tracing the funds used to purchase each seized item of personalty. That may be enough. The allegations that Duane Head has paid no income tax since 1971, that he earned $38,000 from drug trafficking in 1988, and that he earned only $200 per week doing odd jobs repairing cars establish this as a paradigmatic proceeds case. As one commentator has noted:

> In the typical proceeds case, the government shows that a drug trafficker has acquired substantial assets, often purchased with cash, but has no legitimate or declared source of income that could account for more than a fraction of his wealth. Frequently, he has filed no tax returns for several years, and, of course, there is always strong evidence of a "likely source, from which the [trier of fact] could reasonably find that the net worth increases sprang." Such evidence is usually enough to show probable cause to believe that all of the trafficker's more valuable property is subject to forfeiture. . . .

D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 4.03 (1988) (citations omitted). Under a net worth theory, the government could survive a motion to dismiss by alleging, with sufficient particularity, that Duane Head is a drug trafficker, that he has no other known source of income, and that he accumulated substantial assets during the period in which he had no known source of income.

The government essentially has done this. However, not all of the listed property can be forfeited in this way.

> A problem of proof arises where the government makes the mistake of trying to forfeit literally everything owned by the drug trafficker, including a great many items of small value. If the trafficker can show any non-drug income, fairness dictates that he ought to be able to keep a portion of his total assets corresponding to the proportion his non-drug income bears to his drug-derived income.

*Id.* The government has taken the curious step of alleging that Duane Head stated that any money that he made from his car repair business went back into tools and car parts and then seeking to forfeit a large number of Duane Head's tools and car parts. In order to establish probable cause as to these items, the government

would have had to make much more detailed allegations. Because it has not made allegations that can be fairly read to show that the items of personalty associated with Duane Head's car repair business were acquired with the proceeds of drug trafficking, the government must return to Duane Head the items numbered 51–145 in the list of items of personalty seized pursuant to 21 U.S.C. § 881(a)(6). To allow the government to continue in court with respect to these items would be to say that any time that the government pursues a forfeiture on a net worth theory, literally everything a claimant owns may be held in custody pending trial, even where the government acknowledges in its complaint that a claimant has a legitimate occupation, albeit a part-time one.

### VI.

Presumably, the parties can agree on the text of an appropriate order to be entered. If not, the claimants shall present appropriate orders on notice to the government.

SO ORDERED.