**UNITED STATES of America, Plaintiff,**

v.

**ONE PARTIALLY ASSEMBLED DRAG RACER, etc., Defendant.**

**Civ. A. No. 93–4837.**

United States District Court,
D. New Jersey.

Sept. 20, 1995.

**1336**

Neil R. Gallagher, Assistant U.S. Attorney, Office of the U.S. Attorney, Newark, NJ, for Plaintiff.

Salvatore C. Adamo, David M. Quirk, Phillipsburg, NJ, for Claimant.

## *OPINION*

WOLIN, District Judge.

This is a civil forfeiture action in which the government alleges that a certain partially assembled drag racer (the "Property") is forfeitable as proceeds of criminal activity pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). The case is before the Court on the motion of claimant Mac Arthur Crudup (1) for return of the Property, (2) for release of a $5,000 bond claimant filed for return of the Property, and (3) to dismiss the complaint on grounds that the government failed to initiate this action within the required time period and that the complaint fails to state a claim with requisite particularity under Federal Rule of Civil Procedure E(2)(a). For the reasons that follow, the Court will dismiss the complaint without prejudice for failure to comply with Rule E(2)(a), order the government to return the $5,000 bond to claimant with interest at the statutory rate, and deny claimant's motion for return of the Property pending the government's filing of an amended complaint.

## BACKGROUND

Before outlining the factual background of this case, a brief explication of applicable civil forfeiture procedures may be useful.

■ Basically, property may be subject to civil forfeiture on two different grounds: (1) that the property itself played a part in a criminal act; and (2) that the purchase of the property was somehow tainted, either because it was designed to conceal assets derived from criminal activity or because the funds used for the purchase were direct or indirect proceeds of criminal activity.

The complaint in this action asserts two counts, each based on a statute which authorizes seizure of "proceeds" of illegal activity. Eighteen U.S.C. § 981(a)(1)(A) subjects proceeds of certain customs law violations to forfeiture—specifically "any property, real or personal, involved in a transaction or attempted transaction in violation of [31 U.S.C. §§ 5313(a) or 5324(a), or of 18 U.S.C.

§§ 1956–1957], or any property traceable to such property...." Similarly, section 881(a)(6) of the Controlled Substances Act provides for forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such an exchange...." 21 U.S.C. § 881(a)(6).

■ The first step in a civil forfeiture is seizure of the subject property, either following a hearing to determine probable cause or, in certain circumstances, without one. *See Schrob v. Catterson,* 948 F.2d 1402, 1416 n. 13 (3d Cir.1991). The seized property is subject to administrative forfeiture if its value does not exceed $500,000. *Id.; see also* 19 U.S.C. § 1607; 18 U.S.C. § 981(d). The administrative forfeiture process requires the government to provide potential claimants with certain forms of notice of the seizure and of the remedies available to them. *Id.*

■ Upon receiving such notice, a claimant has three options. The first is to "do nothing, in which case the property forfeits to the government." *Schrob,* 948 F.2d at 1413 n. 9. Second, a claimant may file a claim and a cost bond, "thereby requiring the government to seek judicial forfeiture in a court hearing." *Id.* Where a claimant has filed a claim and cost bond in a "drug-related" action "relating to the seizure of a conveyance," Congress has enacted additional expedited procedures. These require the government to initiate judicial proceedings within sixty days of the filing of the claim and cost bond; they also allow a claimant to petition for expedited release and, after that, to file a substitute res bond which, if accepted, allows the claimant to get his property back. *See* 21 U.S.C. § 888; 21 C.F.R. §§ 1316.96, 1316.98. A claimant's third option is to petition the government for remission and return of his property, keeping the matter on the administrative forfeiture track. *Schrob,* 948 F.2d at 1413 n. 9. "Generally, once a government has made an administrative determination on the petition, courts have no power to review that decision." *Id.,* citing *United States v. Von Neumann,* 474

U.S. 242, 245–46, 106 S.Ct. 610, 612–13, 88 L.Ed.2d 587 (1986).

## FACTUAL BACKGROUND

This action arises out of claimant's April 1992 arrest and subsequent indictment on charges that he illegally imported and distributed anabolic steroids during a time period beginning in 1990. In February 1993, claimant was convicted on two counts under the Controlled Substances Act: conspiracy to distribute and possess with intent to distribute a controlled substance, and distribution and possession with intent to distribute anabolic steroids. He was acquitted on the importation charges.

Meanwhile, during claimant's trial, the DEA seized the Property pursuant to a warrant issued by Magistrate Judge Ronald J. Hedges and sent claimant the Notice of Seizure of a Conveyance for a Drug–Related Offense dated January 27, 1993 (the "Notice") attached as Exhibit B to claimant's motion papers.

The Notice states: "Upon the filing of a claim and the posting of a cost bond, the merits of the claim and the determination of forfeiture will be conducted through a judicial proceeding." It further provides that claimants "may, subsequent to the filing of a claim and the posting of a cost bond, file a Petition for Expedited Release." The Notice cites statutory authority for each of these statements and reiterates, in bold type (emphasis in original), that the information regarding expedited review proceedings *"only* applies to cases where the Government proceeds with forfeiture *and* the owner(s) or other interested parties decide to contest the forfeiture *in court,* by filing a claim and posting a cost bond."

On March 10, 1993, claimant signed a Petition for Expedited Release of the Property (the "Petition," attached as Exhibit C to claimant's opening brief), claiming that he paid for the Property between March and June of 1992 "with funds earned during the ordinary course of [his] employment." Claimant's attorney sent the Petition to the U.S. Attorney's office and to the DEA. Neither party alleges that claimant had filed any other claim or bond prior to that time; ac-

cordingly, pursuant to the Notice the Petition was premature because claimant had not yet taken the necessary steps, to wit, the filing of a claim and cost bond, to convert the forfeiture to a judicial proceeding.

When the Petition reached the U.S. Attorney's office, however, it was confused with papers from another file. In a letter to claimant's attorney dated April 8, 1993, the U.S. Attorney purported to deny the Petition; however, the letter referenced a vehicle other than the Property, based its denial on grounds that differed from the government's grounds for forfeiture of the Property, and stated that claimant was entitled to file a substitute res bond in the amount of $5,000 in exchange for the Property, which bond would be forfeited "should the vehicle be judicially forfeited." Again, according to the Notice, since claimant had not yet filed a claim and cost bond, a substitute res bond filing would have been premature.

Nevertheless, claimant's attorney remitted the suggested bond to the DEA under cover letter dated June 14, 1993.[1] The cover letter refers to the bond as a "res bond." The DEA, however, did not release the res but rather "treated it as a cost bond" and sent it to the U.S. Attorney's office on or about August 13, 1993 for litigation.

On August 18, 1993, claimant filed a civil rights action in this Court against various federal actors based upon the seizure of the Property. On October 29, 1993, after moving to dismiss the civil rights action, the government filed the instant forfeiture action, which was subsequently consolidated with the civil rights action. On August 29, 1994, the Court dismissed the civil rights action.

## DISCUSSION

■ Claimant argues that the Court should dismiss the complaint for two reasons: first, that the complaint was filed out of time under 21 U.S.C. § 888(c); and second, that the complaint does not satisfy the particulari-

ty requirements of Rule E(2)(a). When courts grant Rule E(2)(a) dismissal motions, they generally do so without prejudice and provide for relation back to the date of the original filing so that it is not necessary to release the seized property. *See* 7A Jeremy C. Moore, et al., Moore's Federal Practice, E.02 at E–106 (2d ed. 1985). By contrast, where the government has failed to comply with section 888(c) the Court is required to order the conveyance returned and the forfeiture "may not take place." 21 U.S.C. § 888(c). The Court will address the more dispositive issue first.

### 1. The Section 888(c) Argument

■ Twenty-one U.S.C. § 888(c) provides: Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a conveyance seized for a drug-related offense, the Attorney General shall file a complaint for forfeiture in the appropriate district court, except that the court may extend the period for filing for good cause shown or on agreement of the parties. If the Attorney General does not file a complaint as specified in the preceding sentence, the court shall order the return of the conveyance to the owner and the forfeiture may not take place.

Claimant argues that the government's failure to comply with this provision requires dismissal. The government attacks this argument on two fronts, claiming: (1) that claimant never filed a claim and cost bond; and (2) that even if he had, it was not a claim and cost bond "regarding a conveyance seized for a drug-related offense." The Court agrees with the government that claimant never filed a claim and cost bond and that dismissal under section 888(c) is therefore unwarranted. Accordingly, the Court need not reach the government's alternate ground for rejection of claimant's argument.[2]

---

1. In his cover letter, claimant's attorney stated that he had sent a prior substitute res bond on May 11, 1993, and that it was returned. Neither party has explained why the first bond was returned. In any event, the exact date of the DEA's receipt of the bond is unimportant for purposes of this motion.

2. While a detailed analysis of the government's alternative argument is unnecessary, the Court will briefly summarize it for the sake of completeness. The government advances three theories to distinguish the Property from a "conveyance seized for a drug-related offense." First, it

It is clear from the papers submitted, and claimant does not deny, that claimant initially intended that the bond he filed be treated as a substitute res bond, not as a cost bond. The fact remains, however, that the DEA treated it as a cost bond, holding it for nearly two months without returning the Property to claimant and then forwarding the matter to the U.S. Attorney for initiation of judicial forfeiture proceedings, still without returning the res to claimant. The question to be determined is whether the DEA's action, and the U.S. Attorney's subsequent acquiescence for several months in the DEA's treatment of the bond, converted it from a substitute res bond to a cost bond.

The government accuses claimant of using the government's clerical errors to create a windfall for himself, first by "snapping up" the DEA's offer to accept a $5,000 substitute res bond for a seized property which the government alleges is worth $50,000, and then by re-naming the bond a "cost bond" when it appeared it might help him get rid of the forfeiture action altogether. It does appear that claimant, on the advice of counsel, made a conscious decision to forego judicial forfeiture proceedings when he declined to file a claim and cost bond pursuant to the instructions of the Notice.[3] To allow claimant to prevail on a technicality in a proceeding he seems consciously to have waived would be somewhat incongruous.

On the other hand, the government, whether intentionally or not, has also benefited from convenient re-characterizations of the bond. First, the DEA neutralized the U.S. Attorney's alleged mistake in offering to accept a $5,000 substitute res bond for a $50,000 property by treating it as a cost bond and retaining the res. Now, however, that claimant has challenged the complaint under section 888(c), the government relies on claimant's initial characterization of the bond to argue that "cost bond" procedures do not apply. Meanwhile, the government has retained both the Property and the $5,000 bond—the former since its seizure in January 1993 and the latter since its filing in June 1993. This, too, appears incongruous.

■ The claim and cost bond filing is a strict prerequisite for judicial challenge of a civil forfeiture. *See, e.g., Litzenberger v. United States,* Civil Action No. 93–6488, 1994 WL 568486 (E.D.Pa.) (where government complied with notice requirements and claimant failed to file claim and cost bond, court refuses to disturb administrative forfeiture despite assertion of innocent owner defense).

Given the confusion on both sides regarding the nature of the bond, the U.S. Attorney's two- or three-month delay in filing the instant forfeiture action does not justify dismissal of the action. Since claimant never intended to initiate judicial forfeiture proceedings in the first place, a refusal to dismiss them on the technical requirement of section 888(c) will not unduly prejudice him. The Court will, however, order the immediate return of the $5,000 bond to claimant, with interest at the statutory rate.

### 2. Sufficiency of the Complaint Under Rule E(2)(a)

■ Under Rule E(2)(a), judicial forfeiture proceedings must be pleaded with greater specificity than the mere notice pleading generally allowed in civil actions under Federal

---

argues the Property is not a conveyance because, in its partially-assembled state, it cannot be driven. Second, it argues that the forfeiture is not "drug-related" because it is based in part upon violations of the customs laws. Third, it suggests in a footnote that section 888(c) might not apply to "proceeds" forfeitures, basing this argument on an interpretation of 21 U.S.C. § 881 accepted by an Arizona District Court, *United States v. 1992 Team Warlock 28' World Twin Hull Speedboat,* 875 F.Supp. 652 (D.Ariz.1994), but specifically rejected by the Seventh Circuit in *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply,* 55 F.3d 1311 (7th Cir.1995). The Court notes that all three of the government's arguments rest on extremely narrow readings of the Controlled Substances Act, and that the Notice is headed, in large, bold-faced capital letters, "NOTICE OF SEIZURE OF A CONVEYANCE FOR A DRUG–RELATED OFFENSE."

**3.** The Court notes that the Notice itself did not inform claimant of his option to petition for remission and return of the Property within the administrative forfeiture process. The record does not indicate whether claimant or his attorney was aware of this option. Claimant has not, however, challenged the sufficiency of the notice provided by the government.

Rule of Civil Procedure 8(a). *United States v. 1625 Delaware Ave.*, 661 F.Supp. 161, 162 (E.D.Pa.1987) (*"Delaware Ave. No. 1"*); *United States v. 5100 Whitaker Ave.*, 727 F.Supp. 920, 924 (E.D.Pa.1989). The rule provides:

> ... the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

The complaint must contain more than conclusory allegations; although it need not plead evidence, it must plead facts to support its allegations. *5100 Whitaker Ave.*, 727 F.Supp. at 924; *Delaware Ave. No. 1*, 661 F.Supp. at 163. Claimant must be able to respond to it with something more than a general denial. *United States v. U.S. Currency in Amount of $150,660.00*, 980 F.2d 1200, 1204 (8th Cir.1992); *United States v. $39,000.00 in Canadian Currency*, 801 F.2d 1210, 1216 (10th Cir.1986).

█ Rule E(2)(a) has a compelling purpose. Civil forfeiture is a powerful tool in the government's battle against crime, and its use is circumscribed by important Fourth and Fifth Amendment rights. It must be carried out scrupulously within constitutional bounds. Accordingly, "[t]he requirements of Rule E(2)(a) are more than a mere technicality; they are a means of upholding this drastic remedy against a possible due process challenge and of preventing the seizure of the defendant property for long periods of time when, in fact, the government had no claim to the property." *5100 Whitaker Ave.*, 727 F.Supp. at 924, citing *United States v. Pole No. 3172*, 852 F.2d 636, 638 (1st Cir. 1988). The Court must apply Rule E(2)(a) with this important purpose in mind.

█ At an actual forfeiture proceeding the government has the initial burden of showing probable cause that forfeiture is appropriate, after which the burden shifts to the claimant to show innocent ownership. *Schrob*, 948 F.2d at 1413 n. 9. The reason the law places the burden of going forward on the government is obvious; it is, after all, the government that is attempting to deprive a person of his or her property.

█ The government's burden of going forward at trial is reflected in the standard for a sufficient forfeiture complaint. As the government points out, it need not prove probable cause at the pleading stage. *United States v. 613 Warwick Rd.*, Civil Action No. 95–339, 1995 WL 214451 (E.D.Pa.). However, it "must plead '*facts* sufficient to support a reasonable belief that the government *can* demonstrate probable cause for finding the property tainted.'" *Id.* at *1 (emphasis supplied); *United States v. One 1987 Chevrolet Corvette Convertible*, No. 91 C 6524, 1992 WL 107302 (N.D.Ill.) (same, citing cases from other circuits applying same standard). If the law required anything less, the government could hold property for long periods of time based on allegations without sufficient factual basis.[4]

Rule E(2)(a) does not enumerate exactly what facts must appear in a civil forfeiture complaint. As pointed out by the Eleventh Circuit in *United States v. 3097 S.W. 111th Ave.*, 921 F.2d 1551, 1555 (11th Cir.1991), evaluating the sufficiency of pleadings in "proceeds" forfeitures can be especially tricky.

█ In cases where the basis for forfeiture is that the seized property was itself involved in the crime at issue, the connection between the property and the crime is usually obvious. Generally, where the government has indicated that it can show probable cause that the activity in which the property was involved was criminal, it has established a connection between the property and the crime at the same time. In "proceeds" cases,

---

4. Citing no authority, the government appears to argue that Magistrate Judge Chesler's determination that probable cause existed for the seizure reduces or eliminates its burden under Rule E(2)(a). Civil forfeiture always proceeds in three steps: (1) the seizure; (2) the complaint; and (3) the proceeding itself. Regardless of how the seizure was effected, the government must show probable cause at the forfeiture proceeding. It follows that the government must also comply with the pleading rules applicable to forfeiture proceedings, specifically Rule E(2)(a), regardless of how seizure was effected.

by contrast, the government must put on a two-step proof: first, of the predicate criminal acts, and second, of the direct or indirect connection between the property and the acts. At the forfeiture proceeding, showing this connection can be a substantial task:

> In a typical proceeds case, the government shows that a drug trafficker has acquired substantial assets, often purchased with cash, but has no legitimate or declared source of income that could account for more than a fraction of his wealth. Frequently, he has filed no tax returns for several years, and, of course, there is always strong evidence of a 'likely source, from which the [trier of fact] could reasonably find that the net worth increases sprang.' Such evidence is usually enough to show probable cause to believe that all of the trafficker's more valuable property is subject to forfeiture.

*United States v. 2323 Charms Rd.*, 726 F.Supp. 164, 169 (E.D.Mich.1989), quoting D. Smith, Prosecution and Defense of Forfeiture Cases ¶ 4.03 (1988) (citations omitted). Likewise, the government bears a burden of pleading a connection between the seized property and the predicate acts at the complaint stage.

If the government were only required to indicate in its complaint that it can show probable cause that the claimant committed a crime, it could bring forfeiture proceedings against the property of everyone who has ever committed a crime for money. Clearly, Rule E(2)(a) requires more than this, as the courts have recognized. *See, e.g., United States v. 1625 S. Delaware Ave.*, Civ. A. No. 86–5977, 1989 WL 18848, *2 (E.D.Pa.) (*"Delaware Ave. No. 2"*) (allegations that claimant told other persons he purchased seized property with proceeds of drug transactions failed to plead "specifics" or "factual circumstances" to support allegation that seized property was derived from illegal proceeds); *2323 Charms Rd.*, 726 F.Supp. at 169 (gov-

ernment "could survive a motion to dismiss by alleging, *with sufficient particularity*, that [claimant] is a drug trafficker, that he has no other known source of income, and that he accumulated substantial assets during the period in which he had no known source of income") (emphasis supplied).

The complaint in this case is inadequate. Although it alleges the predicate violations of the customs laws and the Controlled Substances Act with sufficient particularity, the government gives no indication that it will be able to trace the proceeds of claimant's alleged criminal activity to his purchase of the Property. The complaint does not allege when claimant purchased the Property, how much he paid for it, that he purchased it with cash, under an alias or in any other suspicious manner, whether he has earned income from sources other than criminal enterprises or, if so, during what time periods. It simply alleges that claimant "earned huge sums of money" by illegally distributing controlled substances which he had participated in illegally importing to this country (Compl. p. 2), then conclusorily states that claimant used the proceeds of these sales to purchase "the various components" of the Property (Compl. p. 3) and that the Property "is traceable to" proceeds from sales of controlled substances "including, but not limited to, anabolic steroids" (Compl. p. 4). These allegations are too vague to pass muster under Rule E(2)(a).[5]

The complaint also asserts that claimant purchased the Property "with the intent to promote the carrying on of specified unlawful activity; *or* with the intent to engage in conduct constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 1986; *or* was made knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of

---

5. *Compare United States v. TWP 17 R 4, Certain Real Prop. in Maine*, 970 F.2d 984 (1st Cir.1992) (complaint satisfied Rule E(2)(a) by alleging that between 1985 and 1988 claimant, then a fugitive from justice without employment and acting under an alias, purchased properties with money derived from drug trafficking); *United States v. $151,388.00 U.S. Currency*, 751 F.Supp. 547, 549 (E.D.N.C.1990) (denying motion to dismiss where government alleged that it seized over $300,000, including $100,000 cash which was found with large quantities of controlled substances in claimants' home, and that these holdings had not been reported on claimants' tax returns and far exceeded gross sales from their only known business).

the proceeds of specified unlawful activity; *or* to avoid a transaction reporting requirement under State *or* Federal law in violation of 18 U.S.C. § 1956." (Compl. p. 3) (emphasis supplied). Again, these allegations are unacceptably vague. The complaint alleges no other indicia of intent to conceal or disguise funds and, as set forth above, alleges no connection between the funds used to purchase the Property and proceeds of the criminal activity. It would be virtually impossible for claimant to respond to these alternative allegations with anything other than a general denial.

The thesis of the complaint seems to be that, because claimant allegedly engaged in illegal activities which generated proceeds, the Property *ipso facto* must have been purchased with these proceeds and/or purchased to conceal or disguise them. No such presumption attaches, without more, to the property of persons who have committed crimes.[6]

The government also points out that it "need not plead its evidence, especially where the surrounding facts are peculiarly within the opposing party's knowledge." *Delaware Ave. No. 1,* 661 F.Supp. at 162. Although the government need not prove its entire case at the pleading stage, it *"must plead facts"* rather than conclusory allegations, *id.* at 163, even where the claimant is already in possession of those facts. The reason for this, once again, lies in the purpose of the increased particularity standard in civil forfeiture actions:

> In addition to enabling the defendant or claimant to begin an investigation and to frame a responsive pleading, the particularity requirement affords the opportunity to form a reasonable belief that the claim has merit, guards against the improper use of the admiralty seizure proceedings and their drastic nature, and has been cited as a safeguard in cases upholding the consti-

tutionality of the admiralty remedies against due process attack.

*Delaware Ave. No. 1,* 661 F.Supp. at 162 (citations omitted).

Accordingly, claimant's motion to dismiss the complaint will be granted without prejudice. If the government files an amended complaint, it will be deemed to relate back to the date of the original filing and, therefore, it will not be necessary to release the Property from seizure.

## CONCLUSION

For the reasons provided above, claimant's motion to dismiss will be granted without prejudice, claimant's motion for return of the Property will be denied, and the government will be ordered to remit the $5,000.00 bond to claimant with interest at the statutory rate.

---

6. The alacrity with which the government has jumped from its finding of criminal activity to its finding that the Property is tainted thereby also appears in its papers opposing this motion: "[T]he complaint ... states *specific* allegations that since [sic] [claimant] was engaged in a specific conspiracy, with certain individuals who were named in the complaint, that imported body building steroids and distributed them. That is specific information enough to enable [claimant] to frame an answer." What the government fails to account for is that it must allege, and claimant must answer, more than allegations of criminal predicate acts. The government ignores the "tracing" portion of the inquiry in civil forfeiture cases based on a "proceeds" theory.